IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
:
    VS                    :
:
ROBERT DAVIS          : NO. 07-CR-375


TRANSCRIPT OF PROCEEDINGS
OF SENTENCE


   BEFORE:     HONORABLE WILLIAM J. NEALON
                 United States District Judge


   DATE:       May 6, 2008


   PLACE:      United States District Court
                 Middle District of Pennsylvania
                 235 North Washington Avenue
                 Scranton, Pa 18503


A P P E A R A N C E S:

For The Government:     FRANCIS SEMPA, ESQ.
                          Assistant United States Attorney

For Defendant:         ERNEST D. PREATE, JR., ESQ.


                    LAURA BOYANOWSKI, RPR
                    OFFICIAL COURT REPORTER

1 MR. SEMPA: Your Honor, this is the case of the
2 United States versus Robert W. Davis, 3 C. R. 07-375. On
3 January 3rd, 2008, the defendant entered a plea of guilty to
4 attempting to use a facility or means of interstate commerce to
5 entice, persuade and induce a minor to engage in illegal sexual
6 conduct and receiving child pornography.
7     A presentence report has been completed. There are
8 no objections by either party to the presentence report. And
9 I'll note and remind the Court that this was a plea agreement
10 which was entered into pursuant to Rule 11 C. 1 C. in which the
11 parties agreed to recommend a specific sentence to the Court.
12     THE COURT: All right. But the defendant is facing
13 under the guidelines a range of 360 months to life, and the
14 recommendation is 264 months or 22 years. And it's my
15 responsibility to determine if the agreed upon sentence departs
16 from the applicable guidelines for justifiable reasons. So
17 that's -- I think that's what we're facing at this particular
18 time. So I would ask you to articulate why you think that --
19 the departure to 264 months from the guideline range of 360 to
20 life is appropriate.
21     MR. SEMPA: Yes, Your Honor. This defendant upon his
22 arrest immediately began to cooperate with the F.B.I. He
23 provided substantial assistance to the F.B.I. that resulted in
24 two separate investigations into similar type of activity
25 around the country. One resulted in information that led to a

search warrant being executed in the State of Maryland where -- at a location where there was supposed to be a sex party involving minors and so forth. And that search warrant was executed. There were certain people that were identified.

That investigation is still in its investigatory stage, but the F.B.I. and the Maryland authorities were quite pleased to receive that information. And it certainly helped further an investigation into similar type of conduct in the state of Maryland. The second we believe key piece of substantial assistance that this defendant provided related to the identity of a child who based upon some of his chats and some of his information regarding another person -- a child who was apparently being prostituted by a parent or a guardian in another part of the country -- the information Mr. Davis provided to the F.B.I. has gotten them very close -- in fact, Agent Mullins indicated they are very close to identifying who this child is and where this child's whereabouts are. And hopefully that will result in that child being positively identified and being able to take further steps to find out who the child is and make sure that no further harm comes to that child.

Those are the two key pieces of substantial assistance that this defendant provided. And when we looked at that plus factoring into his age and the fact that a 264-month sentence is a stiff sentence, it's a significant sentence for

1  admittedly the terrible crimes that he committed, we believe
2  that in all those circumstances a sentence of 264 months was
3  sufficient to punish him for the serious nature of his offense
4  as well as to give him a little bit of a break because of the
5  substantial assistance to law enforcement that he did provide.
6      THE COURT:  How about under 3553 --
7      MR. SEMPA:  Under 3553, Your Honor, obviously the
8  serious nature of the crime, we think that a 22-year prison
9  sentence, 264-month prison sentence, is a harsh, a significant
10 sentence even though it's less than what the guidelines call
11 for.  This individual is 48 years old.  If he serves a large
12 portion --
13     THE COURT:  He's 49 now, isn't he?
14     MR. SEMPA:  He's 49.  If he serves a -- most of that
15 sentence assuming he gets even good time, he's going to be
16 close to the age of 70 when he -- when he gets out of prison.
17 So we think it's sufficiently punishes him for the offense he
18 committed.  We think it does send a deterrent message the fact
19 that someone who was involved in this activity is being
20 sentenced to 22 years in prison, is the type of sentence that
21 would deter others from committing such conduct.  And we also
22 believe that it does -- as I indicated -- take into
23 consideration his age, as well as the fact that he is a repeat
24 offender.
25     These are -- a 22-year sentence is a sentence that is

 1  rarely handed out in cases such as these.  The fact he's a
 2  repeat offender I think justifies the 22-year sentence where
 3  usually a first offender for these type of cases gets anywhere
 4  between 10 to 15 years.  We think he's been significantly
 5  punished for doing this a second time.  He's also been given
 6  something for the information -- the valuable information that
 7  he's provided to the F.B.I.
 8        THE COURT:  Mr. Preate?
 9        MR. PREATE:  Thank you very much, Judge.  I will
10  point out -- I second those remarks by the assistant United
11  States attorney.  I will point out again the fact that age 49
12  he does this -- he's not in the best of health.  If he survives
13  to age 70 --
14        THE COURT:  Why do you say he's not in the best of
15  health?
16        MR. PREATE:  Because there's a number of things he
17  has -- he has --
18        THE DEFENDANT:  I had been diagnosed with melanoma
19  skin cancer.  I've been treated for that.  Right now I have
20  high cholesterol.  Right now I am just on blood pressure
21  medication.  And then I have a family history especially on the
22  male side of not having longevity in the family.  My father
23  passed, I think, at 53 years of age.
24        THE COURT:  All right.  You may proceed.
25        MR. PREATE:  May I proceed, Your Honor?

1           THE COURT: Yes, you may.

2           MR. PREATE: My client accepted responsibility. He has done a very serious transgression of the law. And he needs to be punished for that. And he's -- he's indicated that in his dealings with the government -- and he is seeking treatment. He has a -- an addiction problem and suffers from anxiety and depression as well as from -- for a lot of reasons, dissolution of his marriage, to work problems. And I think that -- that contributed to his seeking relief on the internet.

10           But, you know, those whole new series of crimes come up since the internet started ten years ago basically, and it's spreading. It needs to be dealt with. And so that's why we've agreed to the stiff sentence under Rule 11 that the government has offered us because it does -- we think reflects the seriousness of this matter. And we also ask the Court to -- in its consideration -- because of this he has been evaluated at the Joseph J. Peters Institute in Philadelphia back for -- before his sentencing up in Albany the first time he did this. By the way, there was never any -- he never had any contact -- he didn't touch any child here.

21           That's another thing I wanted to point out. If -- he hadn't gone to the point where he had gotten some child and touched some child or photographed some child. Yeah, he did see the pictures on the internet but --

25           THE COURT: He went beyond the internet. He went to

1  K-Mart to meet a 14-year-old --

2　　　　　　MR. PREATE: He thought he was. It was a cop. But
3  I've been on the state side, Judge, and over here. I have seen
4  where they actually touched. They haven't touched here and --
5  in either case up in Albany, New York, federal court up there
6  or this one there was no actual contact, no pedophilia involved
7  in that sentence, no assault involved here. So I mean that
8  would -- that to me is a little of mitigation. But the fact is
9  the 22 years does I think serve justice. He needs help. He
10 needs to go to -- he needs to -- somebody has to look at this,
11 what is driving this man, maybe a sex offender program inside
12 the federal prisons can look at this to determine is this --
13 this kind of behavior -- what makes people like him tick to
14 drive to do this sort of thing. We would ask that you sentence
15 him there for to be evaluated by the -- the -- for treatment in
16 the sex offender treatment program. Whatever that may be -- I
17 don't know where it's located. But hopefully he can get into
18 the --

19　　　　　　THE COURT: It will be a long time before he's
20 eligible for that.

21　　　　　　MR. PREATE: Of course, Judge, toward the end of
22 sentence. We realize that. You know, with all his health
23 problems -- and hopefully he will be able to lead a better life
24 inside prison, be positive. I tried to talk to him repeatedly
25 through this whole process, Judge, about contributing, about

1  being a positive contributor while he's inside a prison.  That
2  can be done.  That can be done, and I urged him to continue to
3  stay in touch with his mother, who is over here and his --
4  she's tremendously supportive of him -- and is ex-wife is the
5  same way, down in Delaware County.  And his children miss him
6  terribly.  You seen the pictures of him with his children just
7  a year ago.
8           The idea here is that I want him to continue to
9  maintain family.  He's got two good kids that are young, they
10 are in their teens.  One is 12 and nine.  So they miss him.
11 They write to him.  He writes to them.  So there is some good
12 in this man.  And but again, you know, the ends of justice is
13 in your hands here.  We leave that to your wisdom.  You've
14 always been that kind of judge.  So we submit ourselves to you
15 at this time.  Do you want to say something to the judge?
16          THE DEFENDANT:  Give me a second.
17          THE COURT:  Put the microphone so I will be able to
18 hear him.
19          THE DEFENDANT:  I'm sorry for taking up your time and
20 everybody else's time here.  It's stupid.  It's not well
21 thought out and obviously impulsive, and I apologize for all of
22 that.  I let everybody down from I family, to my kids to
23 obviously to you and the court system originally.  And I am
24 very sorry for the people to love me very much.  I feel some
25 way that I -- I would benefit from some kind of help or

1  assistance somewhere down the road whether it be now or later
2  on. We will see if that would help and help me understand
3  about myself as well.
4        THE COURT: Okay. Well, it's -- you know, it's a --
5  it's a frightening chain of events and activity in which you
6  involved yourself beyond belief. There is something wrong.
7  You're a college graduate. You are married and have children.
8  Opportunity was available to you, and unfortunately you turned
9  the wrong way as far as your personal conduct was concerned.
10 It's extremely sad and really a scary situation. I mean, you
11 read all of the conversations you had and the content of those
12 conversations.
13       It's -- it's unbelievable that an educated man could
14 act in such a manner. But what's before me at this time is
15 whether I will accept the agreement as to the sentencing. And
16 I recognize, as government counsel has pointed out, that 22
17 years for a 49-year-old-man is a lot of time. And whether you
18 will ever survive that period of time I don't know. But I
19 think the public has to be protected from you for a significant
20 amount of time. Now, as to the justification for accepting the
21 agreement, I will adopt -- accept and adopt the representations
22 of government counsel, Mr. Sempa, that you cooperated from the
23 beginning, which you did, you never denied what your
24 involvement was.
25       It was shocking within a year after coming out of

prison you resorted to the same type of conduct and exposure. But also you were of substantial assistance principally in Maryland. I will take into consideration your health, and I suppose that will be enough to warrant accepting and implementing the agreement. So the Court will accept the 11 C. 1 C. agreement. Anything else before sentencing?

        MR. SEMPA: No, Your Honor.

        THE COURT: Pursuant to the Sentencing Reform Act of 1984, in view of the considerations expressed in 18 United States Code Section 3553 A., it's the judgment of the Court that the defendant, Robert Davis, is hereby committed to the custody of the bureau of prisons to be imprisoned for a term of 264 months. This term consists of terms of 264 months on each counts one and two -- or one and three, excuse me -- and are to be served concurrently.

        It's also ordered that the defendant pay a special assessment of $100 on each counts one and three for a total of $200, which is due immediately. It is also found that the defendant does not have the ability to pay a fine. Upon release from imprisonment, the defendant is be placed on supervised release for a term of life. This term consists of terms of life on each of counts one and three to be served concurrently. And within 72 hours of release from the custody of the bureau of prisons, he shall report in person to the probation office in the district to which he's released. While

on supervised release, he shall not commit another federal, state or local crime, shall comply with the standard conditions that have been adopted by this Court and shall comply with the following additional conditions which are some seven or eight in number.

One, he shall participate at his own expense in the sex offender treatment program which may include risk assessment testing, counseling and therapeutic polygraph examinations and shall comply with all requirements of the treatment provider. You can understand me, can you?

THE DEFENDANT: Uh-huh.

THE COURT: Treatment is to be conducted by a therapist approved by the probation officer. No. 2, the defendant shall comply with the registration requirements of sex offender registration agency in any state where he resides or is employed or carries on a vocation or is a student. Three, he shall have no direct or indirect contact with any person under the age of 18 except in the presence of an adult who is aware of the nature of the defendant's background including the current offense and who has been approved by the probation officer.

Four, the defendant shall not reside or loiter within a thousand feet of places where children under the age of 18 congregate which includes playgrounds, schools, parks, daycare centers, arcades and youth sporting events and similar type

1 facilities.
2     Five, the defendant shall not use a computer with
3 access to any, quote, online computer service, end of quote,
4 without the prior written approval of the probation officer.
5 This includes any internet service provider, bulletin board
6 system or any other public or private computer network.
7     Six, he shall be required to submit a search of his
8 person and any -- of his person and any property, house,
9 residence, vehicle, papers, computer, other electronic
10 communications or data storage devices or media and effects at
11 any time with or without a warrant by any law enforcement or
12 probation officer with reasonable suspicion concerning unlawful
13 conduct or a violation of a condition of supervised release and
14 by any probation officer in the lawful discharge of the
15 officer's supervision function.
16     Seven, he shall comply with the terms and conditions
17 set forth in the computer monitoring slash filtering
18 participant agreement with the Middle District of Pennsylvania
19 and shall pay the cost of computer monitoring slash filtering
20 program not to exceed the monthly contractual rate in
21 accordance with the probation officer's instructions.  And,
22 eight, he shall cooperate in the collection of a D.N.A. sample.
23 The Court finds that the defendant poses a low risk of future
24 substance abuse and, therefore, suspends the mandatory drug
25 testing requirement.

1          The Court finds also that the sentence of 264 months
2  to be reasonable in view of the considerations expressed in 18
3  United States Code Section 3553 A. and the government's motion
4  for downward departure pursuant to 18 United States Code 5 K.
5  1.1 and 6 B. 1.2 C. 2; is that correct?
6          MR. SEMPA:  Your Honor, there was no formal written
7  motion, but there was -- the 11 C. 1 C. agreement in effect
8  acted as a motion to depart.
9          THE COURT:  Now, Mr. Davis, at the time you entered
10 your guilty plea I informed you in some circumstances you or
11 the government may have a right to appeal any sentence I might
12 impose.  I now advise you of your right to appeal this sentence
13 to the United States Court of Appeals.  And if you are unable
14 to pay cost of the appeal, you may apply for leave of Court to
15 appeal in forma pauperis.  And if it's proved, counsel will be
16 appointed for you.  You will not be required to pay any costs.
17 Did you understand everything that I explained in your
18 sentence?
19         THE DEFENDANT:  Yes, sir.
20         THE COURT:  Do you have any questions about it at
21 all?
22         THE DEFENDANT:  No.
23         THE COURT:  Anything else?
24         MR. SEMPA:  Yes, Your Honor.  Pursuant to the plea
25 agreement, the government would move to dismiss count two

against the defendant.

THE COURT: So ordered.

MR. SEMPA: Thank you, Your Honor.

MR. PREATE: I have one request, and that is that his mother is here age approximately 70 and not in the best of health. She lives in the Wilkes-Barre area. And could you recommend to the bureau of --

THE COURT: I will.

MR. PREATE: -- approximate sentencing in Pennsylvania --

THE COURT: The place of confinement near the residence of his mother, but I -- I must say I haven't been met with a great deal of success in my recommendation in the past, but I will recommend it.

MR. PREATE: It does help, Judge. Thank you very much.

THE COURT: Thank you. We're adjourned.

1 C E R T I F I C A T E

2

3     I, LAURA BOYANOWSKI, RPR, Official Court Reporter for

4 the United States District Court for the Middle District of

5 Pennsylvania, appointed pursuant to the provisions of

6 Title 28, United States Code, Section 753, do hereby certify

7 that the foregoing is a true and correct transcript of the

8 within-mentioned proceedings had in the above-mentioned and

9 numbered cause on the date or dates hereinbefore set forth; and

10 I do further certify that the foregoing transcript has

11 been prepared by me or under my supervision.

12

13                                  _____
                                  LAURA BOYANOWSKI, RPR
14                                   Official Court Reporter

15
   REPORTED BY:
16
      LAURA BOYANOWSKI, RPR
17    Official Court Reporter
      United States District Court
18    Middle District of Pennsylvania
      235 N. Washington Avenue
19    Scranton, Pennsylvania 18503

20

21

22     (The foregoing certificate of this transcript
does not apply to any reproduction of the same by any means
23 unless under the direct control and/or supervision of the
certifying reporter.)
24

25